Gary A. PENFIELD.

v.

Joseph VENUTI and Scott Venuti.

Civ. No. H–81–307.

United States District Court,
D. Connecticut.

Dec. 8, 1981.

George D. Royster, Jr., Hartford, Conn., for plaintiff.

David W. Cooney, Hartford, Conn., for defendants.

James A. Wade, Hartford, Conn., for defendants.

## RULING ON PENDING MOTIONS AND OBJECTIONS

JOSÉ A. CABRANES, District Judge:

### INTRODUCTION

This motion requires the court to construe the Connecticut criminal records erasure law, Connecticut General Statutes ("C.G.S.") § 54–142a. In particular, the court must determine the extent to which records and other evidence arguably "erased" under that statute, because of the dismissal of charges against a defendant in criminal proceedings, are discoverable in civil litigation pursuant to the Federal Rules of Civil Procedure.

Plaintiff, a citizen of Massachusetts, has brought this action against two Connecticut citizens under the court's diversity jurisdiction. 28 U.S.C. § 1332. He alleges, in substance, that late in the night of June 6, 1979, while operating a motorcycle on Route 17 in Middletown, Connecticut, he was struck and seriously injured by a motor vehicle owned by Joseph Venuti and negligently operated by him or the other defendant, or by one of their agents, servants or employees. *See* Complaint ¶¶ 2–7. Defendants deny liability and now move for a protective order to prohibit the taking of certain depositions and to bar certain requests for documents and interrogatories.

### I.

The record of a substantially identical state civil action, to which the parties have directed the court's attention, reveals that defendant Joseph Venuti apparently was arrested on June 12, 1979 by officers of the Middletown Police Department and "charged with certain criminal and motor vehicle offenses stemming from the incident which is the subject of the [state lawsuit and this federal action]," *Penfield v. Venuti,* No. 30597, slip op. at 1 (Conn.Super. Ct., Middlesex Judicial Dist., May 12, 1981). These charges "were dismissed in the criminal division of the Middletown Superior Court." *Id.* In the civil action pending in the state court, Joseph Venuti objected to "any questions [addressed to him in interrogatories and at depositions] . . . concerning his knowledge of the incident *derived from the police investigation.*" *Id.* at 2 (emphasis added). He objected also to questions "regarding facts [he] might have learned from third party sources, either his attorney, the attorney's investigator, or police sources," and refused to answer questions on those grounds. *Id.*

The objections of defendants in this action are substantially identical. *See* Memorandum of Law in Support of Defendants' Motion to Quash and Motion for Protective Order ("Defendants' Memorandum") (filed Sept. 25, 1981) and Supplemental Memorandum of Law in Support of Motion for Protective Order and Objections to Interrogatories and Production Requests ("Defendants' Supplemental Memorandum") (filed Oct. 26, 1981). Defendants object also to plaintiff's attempt to take the depositions of the police officers whose investigation of the accident resulted in the filing of criminal charges against Joseph Venuti and to plaintiff's request for the production of the physical evidence gathered at the scene of the accident that is now contained in police files. Defendants' Memorandum; Defendants' Supplemental Memorandum; *see*

Memorandum in Opposition to Motion for Protective Order and Motion to Stay ("Plaintiff's Memorandum") (filed Oct. 2, 1981).

Defendants base their claim for a protective order on C.G.S. § 54–142a, the Connecticut criminal records erasure statute, and rely in part on *dicta* in a ruling against them (on a motion to compel the deposition testimony of Joseph Venuti) by the Superior Court in the state action. *Penfield v. Venuti, supra.* They argue that because the requested information is contained in, or pertains to, records that were used during a criminal prosecution that has since been dismissed, C.G.S. § 54–142a bars the requested discovery. *See* Defendants' Memorandum and Defendants' Supplemental Memorandum.

Plaintiff responds to defendants' request for a protective order by arguing that he is "only asking for physical evidence," Plaintiff's Memorandum at 2, and that if this evidence is placed beyond his reach by the Connecticut criminal records erasure statute, that statute is unconstitutional and therefore may not be applied in the present case. Specifically, plaintiff contends that C.G.S. § 54–142a, if applied to deny him access to the physical evidence from the scene of the accident, including paint samples of the motor vehicles involved and testimony of the police officers who analyzed these samples, would deprive him of a property right without the due process of law guaranteed to him by the Fourteenth Amendment to the United States Constitution—apparently, a right to bring a civil action arising out of the incident of June 6, 1979 without undue impairment of his ability to succeed on the merits. *Id.* at 2–3. He argues also that the statute, if applied to keep this evidence from him, would deny him the equal protection of the laws, also in violation of the Fourteenth Amendment. Plaintiff's Memorandum at 2; Plaintiff's Reply Brief in Opposition to Protective Order at 5 (filed Oct. 30, 1981).

Because this action was brought pursuant to this court's diversity jurisdiction, 28 U.S.C. § 1332, state law provides the rule of decision. *See Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In such a case, state law determines the existence of an evidentiary privilege. Rule 501, Fed.R.Evid. ("[i]n civil actions . . ., with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law"); *In re Westinghouse Elec. Corp. Uranimum Contracts Litigation,* 76 F.R.D. 47, 53 (W.D.Pa.1977). *Cf. United States v. Thorne,* 467 F.Supp. 938, 940–941 (D.Conn.1979) (holding, under Rule 501, Fed.R.Evid., and the Supremacy Clause of the United States Constitution, that the federal law of privileges applies in a federal criminal case; refusing to apply the Connecticut criminal records erasure statute in such a case; and ordering the clerk of a state trial court to turn over records of an unsuccessful state prosecution).

Section 54–142a provides in pertinent part that once a criminal prosecution has been dismissed "all police and court records and records of any state's attorney pertaining to such charge shall be immediately and automatically erased." C.G.S. § 54–142a(a). To give effect to this provision, C.G.S. § 54–142a(e) requires that "any law enforcement agency having information contained in such erased records shall not disclose to anyone information pertaining to any charge erased under any provision of this section." Because the Supreme Court of Connecticut has not defined the scope of the term "police records" as employed in C.G.S. § 54–142a(a), this court will, in effect, sit as a state court and apply "what [it] find[s] to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (citation omitted).

II.

■ Police officers perform many functions not directly related to their duty to investigate crimes. This is especially true with regard to automobile traffic and accidents and other kinds of public and personal emergencies. In another context, the Supreme Court has reminded the lower feder-

al courts and state courts of the distinction between the "community caretaking functions" of the police and those activities associated with the investigation of crimes. It has drawn particular attention to the police role in the regulation of automobile traffic and investigation of automobile accidents:

Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. *Local police officers ... frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.*

*Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (emphasis added).

The "community caretaking functions" of the police include, most notably, the investigation of motor vehicle incidents and other emergencies or crises which do not necessarily require investigation of a violation of a criminal statute or action by prosecutorial authorities. They include also, for example, holding a person's property while he is hospitalized, *United States v. Markland,* 635 F.2d 174, 176 (2d Cir. 1980), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2332, 68 L.Ed.2d 851 (1981), or taking custody of an automobile after an accident has occurred, *United States v. Staller,* 616 F.2d 1284, 1289–1290 (5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). In the

aftermath of an automobile accident, the police, in the exercise of their customary community caretaking functions, generally investigate the situation and prepare a report, *see, e.g.,* C.G.S. §§ 14–108a(b) and 14–224(a) (on reports to or by police officers regarding motor vehicle accidents), regardless of whether the accident is one that requires an investigation of a possible violation of the criminal law.

Defendants argue, in effect, that as a result of the Connecticut criminal records erasure statute, records compiled or materials collected routinely by police officers about a motor vehicle accident cannot be discovered in civil litigation arising from that accident if those records or materials become the basis (or form a part) of an unsuccessful prosecution under a criminal statute. The court cannot agree.

It has been stated by the state's highest court that "[t]he intent of the legislature is to be found in the meaning of the words of the statute; that is, in what the legislature actually *did* say, not in what it *meant* to say." *Doe v. Manson,* —— Conn. ——, ——, 438 A.2d 859, 861 (1981) (citations omitted; emphasis in original), and where the statutory language is "plain and unambiguous, there is no room for judicial construction of the statute." *Id.* The scope of C.G.S. § 54–142a is clearly and succinctly stated in the caption or title of the statute: "Erasure of *criminal* records" (emphasis supplied). The statute by its terms is concerned with "all police and court records and records of any state's attorney *pertaining to [a] charge ...*." C.G.S. § 54–142a(a) (emphasis supplied). The relevant "charge" is a charge "in any *criminal* case, on or after October 1, 1969," of which an "accused, by a final judgment, is found not guilty [or which] is dismissed...." *Id.* (emphasis supplied).[1]

On its face, C.G.S. § 54–142a(a) limits the police records which are erased to those "pertaining to" a criminal "charge." The

---

1. *Compare* the language of C.G.S. § 54–142a with the provisions in C.G.S. § 54–76o, the erasure statute for youthful offenders. While section 54–142a "erases" only those records "pertaining to" a "charge," section 54–76o "erases" "all references including [sic] arrest, complaint, referrals, petitions, reports and orders, ... from all agency, official and institutional files." *See Doe v. Manson, supra* —— Conn. at ——, 438 A.2d at 862 (finding scope of § 54–142a narrower than § 54–76o).

statute does not "erase" records pertaining to the performance of customary community caretaking functions or, indeed, all records pertaining to a criminal investigation. The statute by its plain language does not extend to police records which existed prior to a criminal "charge."

A holding that C.G.S. § 54–142a(a) does not "erase" records and other by-products of police investigations prior to a formal "charge" is buttressed by the fact that, under the related statute governing security and privacy of criminal records, "intelligence" and "investigative information" is not subject to the restrictions imposed upon "erased" materials. See C.G.S. §§ 54–142k, 54–142m, 54–142n (circumscribing disclosure of "nonconviction information"); C.G.S. § 54–142g(e) (defining "nonconviction information" as, inter alia, "criminal history record information . . . 'erased' pursuant to section 54–142a"); and C.G.S. § 54–142g(a) (excluding "intelligence" and "investigative information" from definition of "criminal history record information").

If the General Assembly had intended to "erase," under C.G.S. § 54–142a, the "intelligence" and "investigatory information" gathered and recorded by criminal justice agencies, it is doubtful that it would have permitted their disclosure under a companion statute. Indeed, if the courts were to read this statute as defendants suggest—that is, to preclude the use in civil litigation of any and all material collected or records compiled by police officers in cases that prompt an unsuccessful criminal prosecution—the conduct of civil cases arising out of many serious incidents could be hopelessly crippled. The statute on its face does not require that records and testimony of police officers otherwise available in civil litigation be placed beyond the reach of litigants simply because a prosecutor decides that the conduct of a particular person was serious enough to warrant prosecution and the charges against that person ultimately are dismissed. Moreover, the courts cannot impute to the General Assembly an intention to achieve such an extraordinary result in the absence of a clear statutory prescription.

Although it is not necessary in this case to rely directly on the legislative history of the criminal records erasure law, it bears noting that the available legislative history confirms the meaning conveyed by the plain language of the statute. The purpose of the Connecticut General Assembly in enacting this statute was to permit a person against whom criminal charges have been dropped to have the fact of his prosecution "erased" from his record. In other words, the statute was intended to remove the stigma of arrest or other formal charges from those who were never found to have committed any crime. See General Assembly Proceedings 1963: Senate 2729–2730 (remarks of Senator Alfano); General Assembly Proceedings 1963: House of Representatives 3498–3499 (remarks of Representative Duda); see also General Assembly Proceedings 1969: Senate 1748–1749 (remarks of Senator Pickett); General Assembly Proceedings 1969: House of Representatives 2196–2200 (remarks of Representatives Strada, Ajello, and Povinelli).

However, the General Assembly evinced no intention to accord special tactical advantages in civil litigation to a person involved in a motor vehicle incident merely because thereafter he is arrested and prosecuted but ultimately held harmless under criminal law. Plaintiff here apparently seeks nothing more than the evidence that would have been available to him if defendant Joseph Venuti had not been arrested and prosecuted. It does not appear that he aims to discover information drawn from the unsuccessful prosecution or otherwise to impose on the defendant the stigma of his arrest. In these circumstances, to permit defendants in this civil action to invoke C.G.S. § 54–142a in order to prevent the disclosure of evidence that would have been available absent the arrest and prosecution of defendant Joseph Venuti would be to permit them to benefit from the fact that Joseph Venuti's behavior prompted, for a time, prosecutorial attention. This would constitute an irrational and bizarre reading of the state's criminal records erasure law and is therefore to be avoided. See, e.g., Lechner v. Holmberg, 165 Conn. 152, 159,

328 A.2d 701, 706 (1973); *Stone v. Sullivan,* 154 Conn. 498, 503, 227 A.2d 76, 78 (1969); *Muller v. Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524, 527 (1958).

Most or all of the physical evidence collected by the police at the time of the incident which is the subject of this lawsuit presumably would have existed notwithstanding the criminal prosecution. That evidence would have been collected, or reported upon, by police officers performing their community caretaking functions or reported to the police under applicable law. *See,* *e.g.,* C.G.S. §§ 14–108a(b) and 14–224(a). Connecticut's criminal records erasure statute does not prevent access to such evidence in a civil action merely because the police retrieved physical evidence before private parties could do so; because the police thereafter submitted reports on the incident; and because prosecutors thereupon commenced criminal proceedings (ultimately unsuccessful) against the person who happens to be a defendant in the civil action.

### III.

■ It is difficult to state with precision a general rule on the demarcation between the community caretaking functions of law enforcement officials and their prosecutorial functions. Indeed, the questions asked by such officials and the evidence sought by them in a criminal investigation may be the same as in any inquiry undertaken in the discharge of their community caretaking functions. Accordingly, the criminal records erasure statute sensibly can foreclose disclosure of information only when a person (ultimately held harmless under criminal law) is actually charged or arrested; it is the charge or arrest which triggers a criminal prosecution and imposes the stigma with which the statute is primarily concerned.

In defining the start of a criminal prosecution in the context of the Sixth Amendment guarantee of the right to counsel, the Supreme Court has found that "the initiation of adversary judicial criminal proceedings ... by way of formal charge, preliminary hearing, indictment, information, or arraignment" signals the commencement of a criminal prosecution. *Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972). *See also Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). The Connecticut General Assembly, in the related statute governing security and privacy of criminal records, includes "arrest" as one of several kinds of "formal criminal charges." C.G.S. § 54–142g(a). *Cf. United States v. Henderson,* 482 F.Supp. 234, 242 (D.N.J.1979) (identifying arrest as the initiation of a criminal prosecution for purposes of "expungement" and related provisions of the federal Youth Corrections Act, 18 U.S.C. § 5021). *See also People v. Neuman,* 104 Misc.2d 324, 428 N.Y.S.2d 577, 579 (Sup.Ct. Westchester Co. 1980) (holding that for purposes of the New York criminal records erasure statute "official records and papers ... relating to the arrest or prosecution" do not include investigative and audit reports); *P. v. Dallas County Child Welfare Unit,* 577 S.W.2d 385 (Tex.Civ.App.1979) (finding that Texas criminal erasure statute applies to child welfare records but not to investigative and "nonaccusatory" reports in those records).

### IV.

The court is able, under the principles outlined above, to dispose of the issues presented by the pending motions and objections.

■ The physical evidence obtained at the scene of the accident which otherwise would have been obtainable by private parties in the absence of a criminal prosecution are discoverable.

■ Questions directed to police officers and others on the subject of the evidence police officers collected at the scene of the accident are not generally foreclosed by C.G.S. § 54–142a. Police officers may be deposed concerning the performance of their routine community caretaking functions as well as about the performance of their criminal investigatory functions prior to the time a defendant was arrested or charged. However, pursuant to C.G.S. § 54–142a, where criminal charges were brought and later dismissed, no questions may be asked of police officers and others regarding any aspect of the investigation and prosecution which took place after the

defendant in the criminal case was arrested or charged.

## V.

Plaintiff's arguments on the pending motions have been limited entirely to the question of the constitutionality of C.G.S. § 54–142a. The court has fully considered all of his arguments. However, the evidence plaintiff seeks, *see* Plaintiff's Memorandum, shall be available to him under the court's construction of the statute; foreclosing access to information drawn from the prosecution of Joseph Venuti will not deprive this plaintiff of any evidence he claims. Accordingly, the court need not reach the question of whether, in some circumstances, the application of C.G.S. § 54–142a would violate any constitutional rights of a litigant in a civil lawsuit.

## CONCLUSION

For the foregoing reasons, defendants' motion for a protective order is denied.

Defendants also have objected to certain interrogatories and requests for production. They assert, in conclusory statements unsupported by any explanation or by reference to any authorities, that the requested discovery is protected by "the attorney-client privilege or work-product rule" or is "vague, ambiguous and unintelligible." *See* Defendants' Supplemental Memorandum at 5–6. Because these interrogatories and requests for production are straightforward and unambiguous and because the defendants' objections are not articulated in a form that enables the court to understand them, they are overruled.

Defendants shall respond to plaintiff's discovery requests by no later than December 31, 1981.

No good cause having been shown why the deposition of defendant Joseph Venuti should not proceed under applicable federal rules of civil procedure, plaintiff may, by no later than December 18, 1981, serve upon that defendant a notice for the taking of his deposition. Any such deposition shall be completed by no later than December 31, 1981.

It is so ordered.