**Gary A. PENFIELD**

v.

**Joseph VENUTI and Scott Venuti.**

**Civ. No. H–81–307.**

United States District Court, D. Connecticut.

May 24, 1984.

---

George D. Royster, Jr., Mark B. Seiger, Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for plaintiff.

John J. Langenbach, Regnier, Taylor, Curran & Langenbach, James A. Wade, Steven L. Richards, Robinson, Robinson & Cole, Hartford, Conn., for defendants.

## RULING ON PENDING MOTIONS

JOSÉ A. CABRANES, District Judge:

In this diversity action, plaintiff alleges that late in the evening of June 6, 1979, while operating his motorcycle on Route 17 in Middletown, Connecticut, he was struck and seriously injured by a motor vehicle owned by defendant Joseph Venuti. Plaintiff contends that his injuries resulted from the negligent operation of that vehicle by Joseph Venuti, or by his son, defendant Scott Venuti, or by their agent, servant or employee. *See* Complaint ¶¶ 2–7 (filed May 5, 1981). Defendants maintain that they were both at home asleep when the incident occurred and thus deny all liability.

On March 1, 1984, defendants filed a motion *in limine* seeking the exclusion of evidence indicating that Joseph Venuti was arrested in connection with plaintiff's mishap or that Scott Venuti invoked his Fifth Amendment privilege against self-incrimination at a deposition held September 10, 1979 in a substantially identical state court action. The motion also requests that evidence relating to plaintiff's medical expenses or lost wages for the period following May 1980 be excluded. In addition,

defendants seek to prevent the admission of testimony derived from toxicological reports which the court has previously held to be protected from disclosure by the Connecticut criminal records erasure statute, Conn.Gen.Stat. § 54–142a. *See Penfield v. Venuti*, 93 F.R.D. 364 (D.Conn.1981).

Finally, defendants have moved for the imposition of sanctions, claiming that possession of the toxicological reports by plaintiff's counsel and their stated intention to use the reports at trial constitutes a knowing and willful violation of prior orders of the court.

## I.

### A. *Admissibility of Arrest*

■ Criminal charges against Joseph Venuti stemming from the incident which gave rise to this lawsuit "were dismissed in the criminal division of the Middletown Superior Court." *Penfield v. Venuti*, No. 30597, slip op. at 1 (Conn.Super.Ct. May 12, 1981). Under Connecticut law, which is controlling in these circumstances,[1] it is well-settled that "evidence of arrest without conviction is not admissible to attack the credibility of a witness." *State v. Corley*, 177 Conn. 243, 245–246, 413 A.2d 826, 828 (1979); *State v. Annunziato*, 169 Conn. 517, 524, 363 A.2d 1011, 1016 (1975); *see* C. Tait & J. LaPlante, *Handbook of Connecticut Evidence* § 7.21, at 111–112 (1976 & Supp.1982); *see also* Annot., 20 A.L.R.2d 1421, 1425 § 3 (1951).

The Supreme Court has noted that an

[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty.

*Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948); *see* 3A J. Wigmore, *Evidence* § 980a (J. Chadbourn rev. ed. 1970). Nevertheless, in Connecticut, evidence of an arrest without conviction is admissible for the limited purpose of showing a witness' interest, bias or motive to testify falsely. *State v. Moynahan*, 164 Conn. 560, 600–602, 325 A.2d 199, 220–221, *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *see State v. Tropiano*, 158 Conn. 412, 426, 262 A.2d 147, 153–154, *cert. denied*, 398 U.S. 949, 90 S.Ct. 1866, 26 L.Ed.2d 288 (1969), *citing State v. Luzzi*, 147 Conn. 40, 46, 156 A.2d 505, 508 (1959). *See also United States v. Dardi*, 330 F.2d 316, 336 (2d Cir.) ("[w]hile an arrest alone is not normally admissible to impair the credibility of a witness, the fact that it may embitter him so as to motivate him to testify as he has may be relevant"), *cert. denied*, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964).

■ Defendants argue that the erasure of records pertaining to Joseph Venuti's arrest, pursuant to Conn.Gen.Stat. § 54–142a, prohibits plaintiff from inquiring about the arrest at trial, notwithstanding the rule of *State v. Moynahan*. *See* Motion in Limine (filed Mar. 1, 1984) at 1. It is true that section 54–142a, in addition to preventing courts and state agencies from disclosing records relating to a criminal prosecution which results in a disposition favorable to the accused, *see Doe v. Manson*, 183 Conn. 183, 184–188, 438 A.2d 859, 861–862 (1981), also provides that

[a]ny person who shall have been the subject of such an erasure shall be

---

1. Connecticut law controls the admissibility of Joseph Venuti's arrest because the relevant state rule is "meant to prescribe rights and obligations of the parties not related to fact-finding." Wellborn, *The Federal Rules of Evidence and the Application of State Law in the Federal Courts*, 55 Tex.L.Rev. 371, 396 (1977); *see* Rule 401, Fed.R.Evid. Evidence of an arrest without conviction is excluded not because it has no probative value but because its introduction at trial would erode, if not undermine, the fundamental principle that one accused of a crime is presumed innocent until proven guilty. Because the admissibility of the arrest turns on substantive law rather than on an evidentiary rule, the *Erie* doctrine requires the court to apply Connecticut law. *See* 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1101[02] (1983), *construing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Rovegno v. Geppert Brothers, Inc.*, 677 F.2d 327, 329 & n. 3 (3d Cir.1982); *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 865–866 (2d Cir.1981); *Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837, 838 (5th Cir.1976).

deemed to have never been arrested within the meaning of the general statutes with respect to the proceeding so erased and may so swear under oath. Conn.Gen.Stat. § 54–142a(e); *see State v. West,* 192 Conn. 488, 492, 472 A.2d 775, 778 (1984) (Peters, J.). When the Connecticut Supreme Court decided *State v. Moynahan,* the predecessor of section 54–142a(e) already provided that

> [n]o person who shall have been the subject of such an erasure shall be deemed to have been arrested ab initio within the meaning of the general statutes with respect to the proceeding so erased.

Conn.Gen.Stat. § 54–90(e), *quoted in* Jacobs, *Erasure of Arrest Records: The Connecticut Statute,* 47 Conn.B.J. 2, 10 (1973). The addition of the phrase "and may so swear under oath," *see* 1974 Conn. Pub.Acts 74–163 § 2, did not reverse the long-standing rule that an arrest without conviction is admissible to establish a witness' bias, interest or motive to testify falsely. The fear that an arrest may engender hostility in a witness which will color his testimony is not eliminated by the erasure of records relating to that arrest. The arrest occurred, and the opponent of the witness cannot be foreclosed from attempting to show that the arrest has impaired the witness' ability to testify in an unbiased manner. *See State v. Luzzi, supra,* 147 Conn. at 46–47, 156 A.2d at 508.

Moreover, the legislative history of the 1974 amendment to section 54–90(e) (now section 54–142a(e)) indicates that overruling the holding of *State v. Moynahan* was neither contemplated nor intended by the General Assembly. The amendment was designed to minimize the stigma of an arrest by permitting persons whose arrest records are erased to inform potential employers or bank loan officers that they have never been arrested, thereby enabling them to "become respectable citizens in our society." 17 H.R.Proc., 1974 Sess. 3052 (remarks of Rep. Fabrizio); *see also id.* at 6115 (remarks of Rep. Bingham); 17 S.Proc., 1974 Sess. 2776 (remarks of Sen. Fauliso); *id.* at 2779 (remarks of Sen. Guid-

era). As one sponsor of the measure noted,

> "[v]ery often, persons are concerned ... about what their status is and, in my opinion, this bill makes their status clear. They have no record and may so state.

17 H.R.Proc., 1974 Sess. 3051 (remarks of Rep. Bingham).

■ Accordingly, defendants' motion *in limine* with respect to the fact of Joseph Venuti's arrest is denied. On cross-examination, plaintiff's counsel will be permitted to ask Joseph Venuti if he was arrested. Other witnesses may not be called to prove that the arrest occurred, *see* C. McCormick, *Law of Evidence* § 42, at 84 (E. Cleary 2d ed. 1972), and extraneous evidence of the arrest will not be admitted. *See Penfield v. Venuti, supra,* 93 F.R.D. at 369–370. Before questioning Joseph Venuti about the arrest, plaintiff's counsel must indicate to the court, out of the hearing of the jury, "in what connection any motive or bias [is] intended to be shown," *State v. Moynahan, supra,* 164 Conn. at 601, 325 A.2d at 220, *quoting* 124 Record & Briefs 298, *Hayward v. Maroney,* 86 Conn. 261, 85 A. 379 (1912), and defendants' counsel will be free at that time to object on the grounds that evidence of the arrest is sought to be introduced for an invalid purpose.

## B. *Admissibility of Invocation of Fifth Amendment Privilege*

The Fifth Amendment secures a right "to remain silent unless [a witness] chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Spevack v. Klein,* 385 U.S. 511, 514–515, 87 S.Ct. 625, 627–628, 17 L.Ed.2d 574 (1967). However, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them ...." *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), *citing* 8 J. Wigmore, *Evidence* § 2272, at 439 (J. McNaughton rev. ed. 1961); *id.* at 335, 96 S.Ct. at 1566 (Brennan, J., concurring in part and dissenting in part); *Lef-*

kowitz v. Cunningham, 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977); see National Acceptance Co. v. Bathalter, 705 F.2d 924, 929–931 (7th Cir. 1983) ("Baxter established that the drawing of an adverse inference from privileged silence in a civil case does not make the exercise of the privilege sufficiently 'costly' to amount to compulsion when there is other evidence of the fact"). Connecticut decisions are in accord with this "prevailing rule." See Olin Corp. v. Castells, 180 Conn. 49, 53–54, 428 A.2d 319, 321 (1980).[2]

▮ At a deposition held September 10, 1979, Scott Venuti refused to answer any questions concerning his whereabouts the evening plaintiff was injured or otherwise pertaining to his involvement in or knowledge of the incident, invoking his Fifth Amendment privilege. There is no doubt that the privilege against compelled self-incrimination may be invoked in a pretrial proceeding such as a deposition. E.F. Hutton & Co. v. Juniper Development Corp., 91 F.R.D. 110, 114 (S.D.N.Y.1981); see In re Folding Carton Antitrust Litigation, 609 F.2d 867 (7th Cir.1979). It is equally clear, however, that a refusal to answer questions upon assertion of the privilege is relevant evidence from which the trier of fact in a civil action may draw whatever inference is reasonable in the circumstances. Brinks, Inc. v. City of New York, 539 F.Supp. 1139, 1140–1141 (S.D.N.Y. 1982) (Weinfeld, J.), aff'd, 717 F.2d 700, 710 (2d Cir.1983); see also Young Sik Woo v. Glantz, 99 F.R.D. 651, 652–653 (D.R.I. 1983); Davis v. Northside Realty Associates, Inc., 95 F.R.D. 39, 45 (N.D.Ga.1982); E.H. Boerth Co. v. LAD Properties, 82 F.R.D. 635, 644 (D.Minn.1979).

The fact that Scott Venuti's assertion of the privilege did not occur in open court does not alter this result. At a deposition, [t]he invoking statement is uttered in the course of a formal proceeding, after the party and his counsel have had an opportunity to consider their response. It is a

sufficiently grave admission that parties who resort to it are likely to have reviewed and reflected on their actions beforehand.

Heidt, The Conjurer's Circle: The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1118–1119 (1982); see United States v. Local 560, International Brotherhood of Teamsters, 581 F.Supp. 279, 305–306 (D.N.J.1984); cf. C. McCormick, supra, § 263, at 632 ("when a man speaks against his own interest it is to be supposed that he has made an adequate investigation").

▮ Permitting an adverse inference to be drawn against a party who invokes the Fifth Amendment privilege during discovery prevents use of the privilege as a weapon in civil litigation. Invocation of the privilege as a defense strategy

clearly cripples plaintiff's effort to conduct meaningful discovery and to marshal proof in an expeditious fashion, if at all.

SEC v. Musella, 578 F.Supp. 425, 428 (S.D.N.Y.1984); see SEC v. Gilbert, 79 F.R.D. 683, 686 (S.D.N.Y.1978) (Lasker, J.). The arguable harshness of the practice, see Lionti v. Lloyd's Insurance Co., 709 F.2d 237, 245–246 (3d Cir.) (Stern, J., dissenting), cert. denied, —— U.S. ——, 104 S.Ct. 490, 78 L.Ed.2d 685 (1983), is mitigated by the ability of the person invoking the privilege to explain why he did so or "to show by other evidence that his response would not have incriminated him." Heidt, supra, 91 Yale L.J. at 1119 & n. 212.

▮ The conclusion that Scott Venuti's invocation of the privilege is relevant does not end the inquiry. The court must also consider whether the probative value of such evidence is "substantially outweighed by the danger of unfair prejudice." Rule 403, Fed.R.Evid.; Brinks, supra, 539 F.Supp. at 1141; see Farace v. Independent Fire Insurance Co., 699 F.2d 204, 210–211 (5th Cir.1983); 5 J. Weinstein & M.

---

**2.** The court has previously determined that questions in this case concerning evidentiary privileges are to be resolved in accordance with Connecticut law. Penfield v. Venuti, supra, 93 F.R.D. at 366; see Rule 501, Fed.R.Evid.; 10 Moore's Federal Practice § 501.06 (2d ed. 1982).

**256**

Berger, *Weinstein's Evidence* ¶ 403[03] (1983).

■ When Scott Venuti invoked his Fifth Amendment privilege at the September 10, 1979 deposition, he did so on the advice of Joseph Bransfield, an attorney appointed by the Superior Court to represent his interests in connection with the then-pending divorce proceeding between his parents. He was sixteen years old at the time. Counsel representing him in the instant case and the related state litigation were not present at the deposition, assertedly because they were given inadequate notice and because plaintiff's counsel declined to postpone the deposition. *See* Motion in Limine (filed Mar. 1, 1984) at 2. *But see* Deposition of Scott Venuti (dated Sept. 10, 1979) at 3, No. 30597 (Conn.Super.Ct.). Why Scott Venuti's counsel, including one of Connecticut's largest law firms, nevertheless permitted their minor client to be deposed in their absence is difficult to fathom.

The probative value of Scott Venuti's invocation of the privilege is apparent. His actions on the night of June 6, 1979 are obviously "of consequence" to plaintiff's claims, and his involvement in the collision which injured Gary Penfield is certainly made "more probable" by a permissible inference flowing from his assertions of the privilege in response to questions regarding his activities that evening. *See Brinks, supra,* 539 F.Supp. at 1140; Rule 401, Fed.R.Evid. Neither Scott Venuti's age nor his representation by counsel possibly unacquainted with the state court tort action nor his willingness to respond to similar lines of questioning at a second deposition two years later significantly diminish the probative value of his refusal to answer. He was not directed to remain silent at the deposition, but invoked the privilege of his own volition based on the advice of counsel that answering the questions might tend to incriminate him. Deposition of Scott Venuti (dated Dec. 23, 1981) at 67–74. Moreover, as Scott Venuti himself pointed out, he was enrolled at the time "in a class on law and the Constitution" in which he

studied the Fifth Amendment "pretty thoroughly." *Id.* at 66. He was not a child blindly obeying instructions with no comprehension of their significance. Scott Venuti was represented at the deposition only by court-appointed counsel because his regular counsel in this and the related state case decided not to attend, for reasons best known to themselves. That decision cannot now be employed to escape the consequences of Scott Venuti's invocation of the Fifth Amendment privilege. Finally, Scott Venuti's willingness to answer questions at a second deposition does not necessarily demonstrate that his invocation of the privilege at the first deposition was the result of purported procedural irregularities. A trier of fact could also infer that his later responses were a more recent fabrication.

■ Rule 403 provides that evidence which is probative "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ...." The rule does not contemplate exclusion of evidence which is prejudicial merely in the sense that it is damning; the prejudice must be "unfair." *See Brinks, supra,* 717 F.2d at 710; *United States v. Cirillo,* 468 F.2d 1233, 1234 (2d Cir.1972), *cert. denied,* 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973). Evidence is unfairly prejudicial for purposes of Rule 403 only if it tends to have some adverse effect on the party against whom it is offered beyond the tendency to prove the fact which justifies its admission into evidence. *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980); *see Brinks, supra,* 717 F.2d at 710; *United States v. DeLillo,* 620 F.2d 939, 947 n. 2 (2d Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 107, 66 L.Ed.2d 41 (1980); 22 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5215, at 274–275 (1978).

■ It has been suggested that because "assertion of the privilege, particularly on the advice of counsel, is an ambiguous response" and because there is a danger that jurors will regard any party invoking the privilege as "a criminal who has probably eluded justice," the admission in a civil case of a party's refusal to answer on Fifth

Amendment grounds may constitute unfair prejudice. *Farace, supra,* 669 F.2d at 210–211. In *Brinks,* however, Judge Weinfeld held that evidence of an invocation of the privilege is not unfairly prejudicial if it is probative of an issue in the litigation; it is " 'hardly the equivalent' of passing a bloody shirt among the jury or introducing a dying accusation of poisoning." 539 F.Supp. at 1141, *citing United States v. Leonard,* 524 F.2d 1076, 1091 (2d Cir.1975) (Friendly, J.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976); *see Brinks, supra,* 717 F.2d at 710.

Accordingly, defendants' motion *in limine* with respect to evidence of Scott Venuti's invocation of his Fifth Amendment privilege against compelled self-incrimination is denied. Plaintiff's counsel will be permitted to read to the jury the questions which Scott Venuti refused to answer at the September 10, 1979 deposition. The court will then instruct the jury that it may, but need not, draw an adverse inference against Scott Venuti based on his refusal to answer, if such an inference is "warranted by the facts surrounding [the] case." *Baxter v. Palmigiano, supra,* 425 U.S. at 317, 96 S.Ct. at 1557.

### C. *Admissibility of Testimony Derived from Toxicological Reports*

█ Plaintiff has indicated his intention to call Dr. Charles Reading, the State Toxicologist, to testify at trial. By reviewing certain toxicological reports found in the court's files, plaintiff's counsel identified Dr. Reading as the person who performed laboratory analyses of physical evidence found at the scene of the accident in which Gary Penfield was injured. These reports had previously been sealed by order of the court, *see Penfield v. Venuti, supra,* 93 F.R.D. at 369–370; Certified Official Transcript of Hearing of April 12, 1982 (filed Apr. 15, 1982) at 13–17, but apparently made their way into the files due to the inadvertence of the Clerk. *See* Letter from George J. Royster, Jr. to Judge José A. Cabranes (dated Apr. 3, 1984). In what can most charitably be described as a novel argument, plaintiff's counsel now contend that they should be permitted to use the toxicological reports at trial because "[o]nce having read [the reports], we do not feel it is fair that the court should ask us to forget what was read. This is practically impossible." Letter from George J. Royster, Jr. to Judge José A. Cabranes (dated Apr. 6, 1984). The contention that stumbling upon information inadvertently made available for public review enables one to use that information at trial in direct contravention of a court order borders on the frivolous. Whatever merit there may be to the old adage "finders keepers, losers weepers," it certainly has no application to materials erroneously placed in the court's files. This is especially true when the presence of those materials in the files is—to anyone familiar with the case—obviously due to a mistake.

█ Plaintiff also asserts that the court's prior order prohibiting use of the toxicological reports must be reconsidered in light of the recent case of *State v. Anonymous,* Conn.L. Tribune, Nov. 15, 1982, at 10, col. 3 (Conn.Super.Ct. May 21, 1982). This argument is unavailing for a number of reasons. First, *State v. Anonymous* construed not the Connecticut criminal records erasure statute, Conn.Gen.Stat. § 54–142a, but the dissimilar erasure provisions of the youthful offender statute, Conn.Gen.Stat. § 54–76*l*. The case therefore supports plaintiff's position only by rough analogy at best. Second, the decision of a lower state court is in no sense controlling on a federal district court in a diversity suit. In the absence of guidance from the Connecticut Supreme Court, this court need not "slavishly follow lower ... court decisions" and is free "to consider all the data the highest court of the state would use" in an effort to determine how that court would decide the issue. C. Wright, *Law of Federal Courts* § 58, at 373 (4th ed. 1983), *quoting Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 851 (2d Cir.1967); *see Commissioner v. Estate of Bosch,* 387 U.S. 456, 477, 87 S.Ct. 1776, 1788, 18 L.Ed.2d 886 (1967). Third, the court's previous decision concerning the

toxicological reports is the law of the case. It is well-established that "where a court has considered and determined a point in a case, its conclusion thereon becomes the law of that case, unless or until it is reversed or modified by a higher court." 21 C.J.S. *Courts* § 195 (1940 & Supp.1983); *see United States v. Swift & Co.*, 189 F.Supp. 885, 902 (N.D.Ill.1960), *aff'd mem.*, 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961). Accordingly, defendants' motion *in limine* with respect to the toxicological reports is granted.

D. *Admissibility of Evidence Concerning Medical Expenses and Lost Earnings*

 Defendants seek to exclude evidence of medical expenses or lost earnings for the period after plaintiff's last reports on these matters were submitted. *See* Motion in Limine (filed Mar. 1, 1984) at 2. Defendants have provided no authority for the requested relief, despite the court's invitation to the parties, at a hearing held April 2, 1984, to submit whatever supplemental briefing they deemed appropriate by April 6, 1984. Accordingly, defendants' motion *in limine* with respect to evidence of plaintiff's medical expenses after May 2, 1980 and lost wages after May 8, 1980 is denied.

## II.

Defendants have moved for the imposition of sanctions to discipline plaintiff's counsel for their possession of the toxicological reports and their stated intention to use the reports at trial. Exactly how the toxicological reports came into the hands of plaintiff's counsel cannot be ascertained from reviewing the record. The uncertain circumstances surrounding acquisition of the reports precludes imposition of the sanctions requested by defendants. This result should not be regarded as a vindication of plaintiff's counsel, whose effort to use the toxicological reports, however obtained, at trial was highly questionable in light of prior orders of the court. Accordingly, the motion for sanctions is denied.

*Conclusion*

For the reasons stated above, defendants' motion *in limine* is granted in part and denied in part and defendants' motion for sanctions is denied.

It is so ordered.