Norman WARTNICK, Appellant,

v.

MOSS & BARNETT, et al., Respondents.

No. C6–91–564.

Court of Appeals of Minnesota.

Oct. 8, 1991.

Review Granted Nov. 26, 1991.

Jerry Snider, Steven L. Severson, Faegre & Benson, Joseph S. Friedberg, Joseph S. Friedberg, Chartered, Minneapolis, for appellant.

John M. Mason, Peggy L. Hicks, Dorsey & Whitney, Minneapolis, for respondents.

Considered and decided by PARKER, P.J. and FORSBERG and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Norman Wartnick appeals the grant of summary judgment for respondents Phillip Gainsley and Moss & Barnett on five legal malpractice claims. The malpractice claims arose out of Gainsley's representation of Wartnick in two actions—a wrongful death suit and an unjust enrichment suit—brought by Betty Nachtsheim, the widow of Robert Nachtsheim. Following a 1986 trial on the consolidated claims, the jury found Wartnick murdered or caused the murder of Robert Nachtsheim and awarded $2,350,000.00 to the Nachtsheim family. In 1988, Wartnick commenced this legal malpractice suit, alleging Gainsley negligently (1) instructed him to assert his fifth amendment privilege, (2) failed to permit him an informed decision about asserting the fifth amendment privilege, (3) failed to offer him for an unconditional second deposition, (4) mentioned during trial his refusal to take a polygraph test, and (5) failed to depose key witnesses and suspects. The trial court granted summary judgment on all claims and this appeal followed.

## FACTS

On May 24, 1973, an unknown assailant shot Robert Nachtsheim shortly after he arrived at work. He died several days later. Appellant Norman Wartnick was a shareholder and officer of Nachtsheim's previous employer, Midwest Florist Supply Co. Respondent Phillip Gainsley represented Wartnick in several claims which arose from Nachtsheim's death. Gainsley's alleged negligent representation in two of these claims—an unjust enrichment claim and a wrongful death claim—forms the basis for this legal malpractice action.

Shortly after Nachtsheim's death, Wartnick contacted Gainsley because he feared he would be charged with Nachtsheim's murder. The threat of indictment was real because days before the murder Wartnick had renewed a "key man" insurance policy on Nachtsheim's life from Prudential Insurance Co., even though Nachtsheim had left Midwest nine months earlier. Midwest was the named beneficiary. During the murder investigation, Gainsley advised Wartnick not to take a polygraph test after the police requested it. Ultimately, the investigation led to no indictments and the case remains unsolved.

In August 1973, Wartnick and Midwest retained Gainsley to obtain the life insurance proceeds, which was successfully accomplished. Three years later, Nachtsheim's widow, Betty, commenced an unjust enrichment claim against Wartnick, Midwest and Prudential to recover the insurance proceeds. She alleged that Midwest had no insurable interest in Nachtsheim's life, that Nachtsheim had told Prudential not to renew the policy, and that Wartnick had murdered or procured the murder of her husband. Wartnick retained Gainsley as counsel. At a February 1979 deposition in this action, Wartnick followed Gainsley's instructions and asserted the fifth amendment privilege against self incrimination in response to two questions: "Do you admit personally murdering Robert Nachtsheim?" and "Do you admit hiring anybody or asking anybody to murder Robert Nachtsheim?" At the time of the deposition, the three year statute of limitations had already expired on a wrongful death action. *See* Minn.Stat. § 573.02, subd. 1 (Supp.1973).

In 1983, the legislature amended the wrongful death statute to remove the limitations period for "intentional acts constituting murder." 1983 Minn.Laws ch. 347 § 2–3 (effective June 15, 1983). The amendment was applied retroactively. *Id.* see *Nachtsheim v. Wartnick* 411 N.W.2d 882, 887 (Minn.App.1987), *pet. for rev. denied* (Minn. Oct. 28, 1987) (holding retroactive application of the amendment did not impair Wartnick's due process rights). With this development, Betty Nachtsheim commenced a wrongful death action

against Wartnick and Midwest. Gainsley was retained as counsel.

The unjust enrichment and wrongful death claims were consolidated and tried before a jury in April 1986. During his trial preparation, Gainsley reviewed the criminal police file, interviewed Lieutenant Krueger, the investigating officer, and deposed Betty Nachtsheim. In February 1986, Gainsley offered Wartnick for a second deposition on the condition the 1979 deposition not be used at trial. Nachtsheim's counsel never responded. At the trial, during Gainsley's opening statement he referred to the fact Wartnick had refused to take the requested polygraph test. Wartnick took the stand and verified each assertion of the fifth amendment privilege to deposition questions about his involvement in Nachtsheim's murder. The jury was instructed it may draw adverse inferences from Wartnick's fifth amendment pleas.

After the trial, the jury by special verdict found Wartnick had murdered or caused the murder of Nachtsheim and awarded Betty Nachtsheim $350,000 in compensatory and $2,000,000 in punitive damages. The trial court dismissed the unjust enrichment claim because the jury found for Midwest.

In January 1988, Wartnick commenced this legal malpractice action against respondents. In October 1988, the prior trial court judge denied Gainsley's summary judgment motion, concluding genuine issues of material fact existed as to four claims: (1) negligent assertion of fifth amendment privilege; (2) informed decision to assert the fifth amendment privilege; (3) prejudice of the admission of the polygraph refusal; and (4) negligent failure to depose or interview key witnesses. After the order, Wartnick served respondents with an amended complaint, which included the four claims above, plus a claim that Gainsley did not mitigate the damage by offering Wartnick for a second deposition on an unconditional basis. After extensive discovery, a second summary judgment motion was heard. Ultimately, the subsequent trial court judge granted summary judgment on each of the five claims and this appeal followed.

## ISSUES

1. Did the trial court err by granting summary judgment to respondents on the fifth amendment claim?

2. Did the trial court err by granting summary judgment to respondents on the failure to mitigate claim?

3. Did the trial court err by granting summary judgment to respondents on the polygraph claim?

4. Did the trial court err by granting summary judgment on the failure to depose key witnesses and suspects claim?

## ANALYSIS

### Standard of Review

■ In reviewing a grant of summary judgment, this court must determine: (1) whether genuine issues of material fact exist, and (2) whether the trial court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The evidence is viewed in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

■ There are four elements of a legal malpractice claim: (1) the existence of an attorney-client relationship; (2) attorney conduct amounting to negligence or breach of contract; (3) the conduct was the primary cause of the damages; and (4) but for the attorney's negligence the plaintiff would have prevailed in the underlying action. *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). It is undisputed that Gainsley represented Wartnick. The disposition of each claim turns on whether there are issues of material fact concerning Gainsley's alleged negligence or causation.

### I

Wartnick first argues the trial court erred by granting summary judgment to Gainsley on the two fifth amendment

claims: (1) Gainsley failed to know or consider the consequences of advising Wartnick to assert the fifth amendment privilege at the 1979 deposition; and (2) Gainsley failed to inform Wartnick of the ramifications of pleading the fifth amendment. Without reaching the question of Gainsley's alleged negligence, we hold the trial court properly dismissed the two claims on the grounds the 1983 amendment to the wrongful death limitations period broke the chain of causation between Gainsley's conduct and Wartnick's damages.[1] The amendment was, in short, a superseding cause which would eliminate any liability even if Gainsley had been negligent.

There are four elements of a superseding cause: (1) its harmful effects occurred after the original negligence; (2) it must not be brought about by the original negligence; (3) it works to bring about a result not otherwise following from the original negligence; and (4) it was not reasonably foreseeable by the original wrongdoer. *Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn.1979).

The 1983 amendment of the wrongful death act's limitation period satisfies the elements of a superseding cause. First, the harmful effects of the amendment—creating Wartnick's liability for Nachtsheim's wrongful death—occurred four years after Gainsley's alleged negligent advice. Moreover, the enactment of the amendment was brought about by the legislature, not by Gainsley's conduct, and therefore, the second element is met. Third, the jury verdict against Wartnick would not have been possible without the amendment of the statute of limitations. Finally, it was not reasonably foreseeable in 1979 that the legislature would amend the wrongful death act's limitation period.

Under the circumstances, reasonable minds can reach only one conclusion, that the amendment of the wrongful death statute broke the chain of causation between Gainsley's alleged negligence and Wartnick's damages. Consequently, the trial court properly granted summary judgment to Gainsley on the two fifth amendment claims. *Lyons v. SCNEI, Inc.*, 262 N.W.2d 169, 170 (Minn.1978) (where reasonable minds can reach only one result causation is a question of law).

II

Wartnick contends Gainsley committed malpractice by not offering him unconditionally for a second deposition on the matters in which he pleaded the fifth amendment privilege.[2] Once creating the unreasonable risk, Wartnick asserts, Gainsley had the obligation to mitigate the risk because of the changed circumstances. The trial court granted Gainsley summary judgment, concluding that Gainsley's decision was a "judgmental one." We agree.

An attorney is required to exercise the degree of care and skill that is reasonable under the circumstances. *Prawer v. Essling*, 282 N.W.2d 493, 495 (Minn.1979). Generally an attorney's mere error in judgment, however, does not create liability if it is "within the bounds of an honest exercise of professional judgment." *Cook v. Connolly*, 366 N.W.2d 287, 292 (Minn.1985). The test is an objective one, requiring the attorney's reasonable exercise of professional judgment. *See Ouellette v. Subak*, 391 N.W.2d 810, 816 (Minn.1986).

In 1985, circumstances had changed from 1979 when Gainsley originally advised Wartnick to assert the fifth amendment privilege. Wartnick now faced a wrongful death action, as well as an unjust enrich-

---

1. The trial court granted summary judgment to respondents on the fifth amendment claims on two other grounds: (1) the claims were barred by the six-year statute of limitations for legal malpractice, and (2) Gainsley was not negligent as a matter of law because he had no duty to anticipate the 1983 amendment changing the limitations period for wrongful death actions. Our holding with respect to the fifth amendment claims is based on the 1983 amendment serving as a superseding cause and therefore we

do not reach the alternate grounds presented by the trial court.

2. Gainsley's decision to offer Wartnick for an unconditional second deposition would have taken place after Betty Nachtsheim's filing of the wrongful death claim in 1984. Therefore, the six-year statute of limitations for legal malpractice does not bar this claim.

ment claim. In response to the changed circumstances, Gainsley offered Wartnick for a second deposition on the condition the 1979 deposition would not be used at trial. Nachtsheim's attorney understandably never responded, and Gainsley pursued the issue no further.

Wartnick argues genuine issues of material fact exist whether Gainsley's decision to not offer an unconditional redeposition was informed and well-founded. First, Wartnick's experts testified that under the circumstances Gainsley negligently failed to offer an unconditional second deposition. Second, Wartnick claims Gainsley was obliged to make a motion in limine to exclude the first deposition to guarantee his choice to not offer a second deposition was well-founded. Third, Wartnick insists that had Gainsley offered Wartnick for another deposition, the first deposition would have lost its probative value, thereby ensuring its exclusion.

■■■ Wartnick's argument is unconvincing. First, it is not at all clear the 1979 deposition would be excluded if a second deposition were taken. Arguably the probative value of the first deposition would survive a second deposition; the fact finder could, for example, infer the second deposition's answers were recent fabrications. Because the decision to admit relevant evidence rests with the trial court, Minn. R.Evid. 403, Gainsley could not be certain the deposition testimony would be excluded. *See Penfield v. Venuti*, 589 F.Supp. 250, 257 (D.Conn.1984) (defendant's first deposition in which he asserted his fifth amendment privilege was admissible). Second, Gainsley tempered the impact of the fifth amendment assertions by eliciting testimony at trial that Wartnick pleaded the fifth amendment because his attorney advised him to do so. This testimony, as the trial court concluded, partly "nullified" the adverse inferences of the deposition answers. Under these circumstances, the trial court concluded, and we agree, the choice to rely on Wartnick's trial testimony rather than offer Wartnick for an unconditional second deposition falls within the

"error in judgment" rule as a matter of law.

### III

Gainsley made these remarks in his opening argument:

Lieutenant Krueger came back to Midwest Florist and said to Norm Wartnick; Look, will you take a polygraph test? It's a lie detector test. Take a lie detector test. Others did. Others will. And Norm said: Sure, I'll take the lie detector test.

Then, apparently, what happened was that either Mr. Wartnick called Lieutenant Krueger or Lieutenant called Mr. Wartnick, and Mr. Wartnick said: Wait a minute. I just talked to my attorney and he said not to take any lie detector test, and the matter was dropped.

According to Mr. Wartnick, his testimony will be that, at least he was advised that, lie detector tests are not always accurate; they're not always responsible and things go haywire.

Wartnick avers the trial court erred by concluding Gainsley's comments about the polygraph test fell within the "error in judgment" rule. We disagree and hold that under the circumstances Gainsley's comments do not constitute malpractice as a matter of law.

■■■ We first acknowledge that in Minnesota polygraph test results are inadmissible in both criminal and civil actions. *State v. Anderson*, 379 N.W.2d 70, 79 (Minn.1985), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986). Further, in criminal cases reference of a polygraph test to a jury is grounds for immediate mistrial. *See State v. Perry*, 274 Minn. 1, 12, 142 N.W.2d 573, 580 (1966). This is not the case in civil trials, however. *See C.M.C. v. A.P.F.*, 257 N.W.2d 282, 283 (Minn.1977) (holding admission of a polygraph test to the jury in a paternity case was not prejudicial error). Given the facts, mention of a polygraph test is not necessarily grounds for a mistrial. Gainsley argues he chose to tell the jury about the refused polygraph test to avoid prejudice to his client if a witness inadvertently mentioned

it. Gainsley, in other words, was required to weigh the relative benefits and drawbacks of mentioning the refused polygraph test. His decision to mention it to the jury, while easily subject to second guessing after the fact, is, under these circumstances, a clear example of a reasonable exercise of professional judgment. *See Meagher v. Kavli*, 256 Minn. 54, 57, 97 N.W.2d 370, 373 (1959) (warning against the "omniscience of hindsight in appraising a lawyer's conduct"). Thus the trial court did not err.

## IV

Finally, Wartnick contends the trial court erred by granting summary judgment on his failure to investigate claim. We disagree for two reasons.·

 First, it is well established in legal malpractice cases that an attorney is only bound to exercise the degree of care reasonable under the circumstances. *Prawer*, 282 N.W.2d at 495. In this case, Wartnick has reinvestigated the facts of the case, has deposed numerous experts and possible witnesses, and now claims Gainsley's earlier investigation was inadequate. Specifically, he asserts Gainsley could have discovered new and decisive facts had a more thorough investigation taken place. It is undisputed, however, that during his investigation Gainsley reviewed the criminal police file, interviewed the investigating officer and deposed Betty Nachtsheim. Under circumstances such as these, we are mindful of the temptation to reevaluate all facets of an attorney's conduct, including the degree and intensity of his investigation, after an adverse judgment is entered. Our responsibility, however, is to determine whether genuine issues of material fact exist as to whether Gainsley's investigation was reasonable under the circumstances. After reviewing the record, we believe Wartnick has failed to establish disputed facts and therefore summary judgment was appropriate as a matter of law.

In the alternative, Wartnick has failed to present issues of material fact regarding whether Gainsley's alleged negligent investigation caused the adverse verdict. Wartnick pointed to no deposition testimony, nor are we able to uncover any, which show disputed facts on the issue of causation. Generally the issue of causation is decided by the fact-finder; however, where different minds can reasonably arrive at only one result causation becomes a question for the court. *Lyons*, 262 N.W.2d at 170. Accordingly, the trial court did not err in granting Gainsley summary judgment on the ground that no disputed facts were provided on the issue of causation.

## DECISION

The trial court properly granted summary judgment on each of the five malpractice claims.

Affirmed.