STATE OF CONNECTICUT *v.* JAMES THOMAS.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 8, 1945—decided January 3, 1946.

*Thomas R. Robinson,* for the appellant (defendant).

*Arthur T. Gorman,* assistant state's attorney, with whom, on the brief, was *Abraham S. Ullman,* state's attorney, for the appellee (state).

BROWN, J. The defendant was found guilty by the jury of an assault with intent to commit rape and was sentenced by the court to imprisonment. He has appealed, assigning several errors, but we do not consider the claimed errors in the charge since the record shows that he failed to make objection at its conclusion as required by the rule. Practice Book, § 156.

Error is assigned in the denial of his motion to set aside the verdict as against the evidence. The complainant at the time when the assault is claimed to have been committed upon her in Derby shortly after midnight on February 20, 1944, was an unmarried woman twenty-three years of age. Except for such corroboration as may be afforded by the testimony of the state's witnesses Salzano and Markiewicz of what they observed, as below narrated, the complainant's own testimony is the only evidence that the defendant did assault her. The material facts which the state so claimed to have proved may be thus summarized: After spending a couple of hours with the witness Emil J. Raccio at a dine and dance place where she had two drinks of whisky which did not affect her sobriety, the complainant was walking home alone, and shortly after 12:30 a.m., as she proceeded southerly along the westerly sidewalk of Derby Avenue, she passed the defendant, a colored man, who was standing at the curb under a street light. A short distance farther on she crossed the street, ascended the steps in front of St. Michael's School, walked around the south side of the building and started up the stairs leading to the school-

yard in the rear. As she reached the twelfth stair, hearing somebody running, she turned and saw the defendant coming after her. He knocked her down on the stairs, got on top of her and, putting one hand over her mouth and the other on her throat, threatened to kill her if she screamed or failed to "give me what I want." After having remained on top of her in spite of her struggles to escape, he took his hand from her throat and she pushed his other hand from her mouth and screamed twice, whereupon he ran away down the stairs.

She then proceeded on up the stairs through the schoolyard and met Mrs. Markiewicz coming, in response to her screams, from the Markiewicz house nearby, which fronted on Bank Street. A moment or two later Salzano drove up in his car, stopped and was told what had happened. Shortly after, Salzano started to drive the complainant home in his car, and as they passed along Derby Avenue she saw the defendant standing on the westerly curb within six feet of the point where she had first observed him. She complained to the police, who arrested him there five or six minutes later. The only source of light at the place of the claimed assault was a lighted third floor attic window in the house next south of the school building. The clothing worn by her assailant, as she described it, was identical with what she stated the defendant was wearing when she observed him on the westerly curb of Derby Avenue.

The testimony of Salzano was that as he was driving in his car on Derby Avenue at a time immediately after the assault is claimed to have occurred the defendant was not standing on the westerly curb of Derby Avenue where the complainant stated she had seen him, but that he did see a colored man with clothing similar to that worn by the defendant running

northerly along the easterly side of the avenue at a point a short distance north of the school. During his cross-examination Salzano admitted two falsifications in his testimony. Mrs. Markiewicz testified as follows: Upon hearing the complainant's scream she switched on her porch light, ran out of her house into the schoolyard and met the complainant at the top of the stairs; the latter was crying and hysterical; she said she had been attacked by a colored man; no one else was there; they went up onto the porch where the witness noticed no marks upon the complainant but she was wiping some blood from her nose or mouth; Salzano, who came along in his car, took her in to drive her home.

The defendant offered evidence by which he claimed to have proved the following: He was happily married and had two small children; he had lived most of his life in Ansonia, where he bore a good reputation and had been steadily employed for the past six years; on the night in question he was standing near the corner hoping to thumb a ride to New Haven; he neither saw nor molested the complainant; the place of the claimed assault was so dark that no dependable identification of anyone by her would have been possible; the liquor which she had consumed rendered her observations unreliable.

Upon the conflicting testimony the state's case was a weak one, as is apparent from the nature and limitations of the evidence which the state relied upon to convict. It involved serious improbabilities. One was the fact that the defendant not only made no attempt to run away from the vicinity of the claimed assault but instead, after the assault is claimed to have occurred, was admittedly standing in the brightly lighted highway where he had been when the complainant first saw him. Another is the lack, as shown by the

complainant's own testimony, of so much as a bruise, scratch or mark of any kind upon her person other than such as may be inferred, if any, from the bleeding above mentioned, the lack of tearing or disarrangement of any of her clothing, except for her scarf being "off [her] coat," as a result of the assault and the lack of any handling of her body by her assailant, notwithstanding the violent nature of the attack which she claimed was made upon her, as already related. Another is that, according to her testimony, after throwing her down he lay on top of her for "ten minutes" in spite of her struggles to escape. As has been pointed out, without the complainant's identification of the defendant as her assailant, the state would have had no case against him. It is significant in this connection that the testimony of Salzano showed that she thought at the time that her assailant had a knife, and the testimony of Mrs. Markiewicz showed that the complainant was then in a "very hysterical" condition. Nevertheless, we cannot hold as a matter of law that the jury had no warrant to find the defendant guilty beyond a reasonable doubt. The court did not err in denying the motion to set aside the verdict.

In the view which we take of the case we need discuss but two of the court's rulings upon evidence assigned as error. The complainant on direct examination identified the defendant as the man she claimed had assaulted her, and testified that earlier in the evening, prior to the assault, she had consumed two drinks of whisky with coca cola. On cross-examination, for the stated purpose of ascertaining whether or not those drinks affected her and what her drinking capacity was, she was asked whether she was "fond of drinking liquor" and whether she had ever drunk "more than two glasses of whisky in one evening." Upon objection by the state both questions were excluded. Inasmuch

as the complainant was the sole witness testifying
that it was the defendant who committed the assault,
whether or not at that time she was affected by the
intoxicating liquor she had admittedly imbibed, and
if so to what extent, was of vital significance in deter-
mining whether her identification of the defendant was
worthy of belief. Since the jury might well have
found that her reaction to the liquor which she had
consumed that evening, and so the effect upon her
powers of observation and judgment, materially de-
pended upon the extent to which she had been accus-
tomed to use intoxicants prior to this time, the line of
inquiry precluded by the court's ruling was relevant
and material upon the issue of identification. The
possible prejudice to the rights of the defendant re-
sulting from excluding this evidence is accentuated by
a subsequent ruling by the court which allowed the
state, over objection, to ask a question in rebuttal
the claimed purpose of which was to show the com-
plainant's sobriety at the time of the alleged assault.
The court erred in excluding the questions referred to
at the beginning of this paragraph.

Essential to establish the state's case was the identi-
fication by the complainant of the defendant as her
assailant, and her ability to make this identification
depended largely, if not entirely, upon whether or not
at the time of the claimed assault there was light at
the locus from a certain window of a house in the
vicinity. The defendant offered as a witness the jani-
tor of the school property upon which the assault was
claimed to have taken place, who testified that he was
familiar with the condition of light at night at the
exact place where it was claimed the assault occurred.
On direct examination he was asked whether, assuming
the light was lighted in the third story of the house
next south of the schoolhouse, it would throw any light

on the stairway. Upon objection the court excluded the question, apparently upon the ground that the essential similarity of conditions, such as atmosphere, had not been shown. The question should have been allowed since the situation was not one which required proof of anything more than a general similarity. *Allen* v. *Mussen,* 129 Conn. 151, 158, 26 Atl. (2d) 776. That the error in excluding it may well have prejudiced the defendant is apparent from the fact that the light referred to was the only source of illumination claimed by the state to have afforded any light on the stairs at the time, so that the complainant's opportunity of identifying the defendant was necessarily in very large measure dependent upon proof that it did so shine. The court erred in excluding the question.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.