STATE OF CONNECTICUT *v.* PASQUALE J. LUZZI

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued October 9—decided December 8, 1959

*Alfonse C. Fasano,* for the appellant (defendant).

*Arthur T. Gorman,* assistant state's attorney, with whom, on the brief, was *Abraham S. Ullman,* state's attorney, for the appellee (state).

MELLITZ, J. The defendant and Gerald Cretella were convicted, after a trial to the jury, of conspiracy to commit the crime of rape. The defendant has appealed, assigning error in the denial of his motions to set aside the verdict and for a mistrial, in

certain rulings on evidence, and in the allowance by
the court of an amendment to the information.

The jury could have found the following facts:
On March 11, 1958, at about 7:30 p.m., the com-
plainant, then eighteen years old, was walking with
a girl friend on Grand Avenue in New Haven when
a car went by containing a group of young men, one
of whom was the defendant. He was known to the
complainant's friend. Shortly thereafter, the car
returned. The defendant was driving and there was
another man with him. The girls accepted an in-
vitation for a ride, and the complainant entered the
front seat with the defendant. The other couple
took the rear seat. After driving around for a time,
the two couples stopped to purchase a pint of liquor.
The greater portion of the liquor was consumed
by the men. The group drove to Winchester Avenue.
The couples having exchanged seats, they parked
for about twenty minutes, during which the defend-
ant and the complainant engaged in amatory pur-
suits, and the defendant sought, unsuccessfully, to
have sexual relations. At about 9:30 p.m., after the
other couple had driven off in another car, the de-
fendant went into a restaurant, leaving the com-
plainant alone in his car for about ten minutes.
When he returned, he told her he had to talk to a
couple of boys. He drove to Grand Avenue. There
he met two young men, with whom he conversed out
of the hearing of the complainant. He drove along
Grand Avenue, and when two cars, headed in the
same direction and filled with young men, pulled up
alongside his car, he remarked, "Oh, my boy
friends." The three cars came to a stop and the
defendant got out and talked to the occupants of
the other cars. When he returned, the complainant
told him she was not feeling well and asked to be

driven home. The defendant agreed to do so, but instead he drove to an isolated area, where he stopped the car. They engaged, again, in amorous activities for five to ten minutes. A group of young men, among whom was Cretella, then arrived in two cars, came up to the defendant's car, and after addressing the defendant, dragged the complainant from the defendant's car, stripped off her clothes and tossed her into one of the other cars. She was then raped by approximately fifteen young men, including the defendant. Thereafter, with Cretella along, she was driven away in the car in which she had been assaulted and was dropped on the street in front of the home of the girl friend in whose company she had been earlier in the evening. Of the persons involved in the assault upon her, the only ones whom the complainant recognized were the defendant and Cretella. The defendant refused to give the police the names of the young men with whom he had talked on Grand Avenue earlier that evening.

Since a new trial is required for reasons hereinafter set forth, it is unnecessary to consider either the claim of the defendant that the court erred in refusing to set aside the verdict for lack of evidence of a conspiracy or his further claim that the court erred in allowing an amendment to the information after the state had completed its case in chief.

A number of rulings on evidence were assigned as error. A police officer, a witness for the state, testified to a conversation with Cretella on March 13, 1958, relative to the events of March 11. The defendant was not present during this conversation. He objected on the ground that Cretella's statements were hearsay as to him and that, since they were made after the alleged conspiracy had terminated, they were not binding on him. The court overruled

the objection and ruled that the statements of Cretella were binding on the defendant. The witness was then permitted to relate the conversation by reading from an unsigned statement by Cretella. The defendant objected to the use of the statement by the witness unless the witness first testified from memory and the memory of the witness was first exhausted. The court overruled the objection. Both rulings were erroneous. Any statement by Cretella made after the termination of the alleged conspiracy and not in the presence and hearing of the defendant could not bind the latter. *Knower* v. *Cadden Clothing Co.*, 57 Conn. 202, 223, 17 A. 580; *Commonwealth* v. *McDermott*, 255 Mass. 575, 581, 152 N.E. 704; *Krulewitch* v. *United States*, 336 U.S. 440, 442, 69 S. Ct. 716, 93 L. Ed. 790. Not only was it error to admit as evidence against the defendant the statement given by Cretella to the police officer but there was error in the method employed to introduce the contents of the statement into evidence. *State* v. *Perelli*, 125 Conn. 321, 327, 5 A.2d 705. No effort was made to introduce the statement as a past recollection recorded, under the rule of *Neff* v. *Neff*, 96 Conn. 273, 278, 114 A. 126. The rulings were, however, harmless. There was nothing in Cretella's statement which in any way related to the defendant. In fact, the statement did not implicate anyone in any wrongdoing. To entitle an aggrieved party to a new trial because of an erroneous ruling on evidence, the ruling must be both erroneous and harmful. *Guerrieri* v. *Merrick*, 145 Conn. 432, 434, 143 A.2d 644; *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 21, 118 A.2d 798. The rulings did not constitute reversible error.

One further ruling on evidence requires consideration. During cross-examination of the complainant,

the defendant attempted to ask her whether she was on parole and informed the court, in the absence of the jury, that he claimed the right to attack her credibility by showing that at the time of this episode she was on parole from the Connecticut state farm for women and had since been returned there. The court excluded the question, on objection by the state, on the ground that to attack the credibility of the witness the defendant was required to establish her conviction of an infamous crime. *State* v. *English,* 132 Conn. 573, 580, 46 A.2d 121. Thereupon, the defendant asked the witness whether it was not true that the reason for her trying to involve him was that she had been returned to the state farm. He claimed the right to establish a motive on her part for involving him, and that an underlying influence leading her to color her testimony was her interest in absolving herself from as much blame as possible and thereby gaining for herself more lenient treatment at the state farm. The state objected on the ground that the defendant was pursuing the same attack on the credibility of the witness as before and that the court had already excluded such questions. The defendant stated his position to be that the questions the court had previously excluded had as their purpose impeachment of the witness on other grounds and that he now sought to attack her testimony on an added ground, that of her interest and motive. The court declared that the questioning did not present an added ground and that the point made by the defendant was the same as before, and ruled that the question should be excluded.

The identification by the complainant of the defendant as one of the participants in the group attack upon her, while not legally essential, was an important element, under the peculiar circumstances

of this case, in the establishment of the conspiracy charged. The defendant freely admitted that he had sexual relations with the complainant, but claimed that they took place earlier in the evening, and he vehemently denied any participation in the series of assaults which occurred when she was attacked by the group. He disputed seriously her ability to identify him under the conditions which prevailed. In her testimony on direct examination, concerning the assaults by the group, she said that toward the end she saw the defendant coming to have intercourse with her and she said to him, "Thanks, Frankie [because she did not then know his name was Pat]. Thanks, Frankie, for what you done to me." She testified further that "he turned around and said he didn't do nothing." She added that the defendant had on a gray sweat shirt, that he was dressed earlier with the same sweat shirt, and that it was pitch dark, in a wooded area under a bridge, with no lights around at all. In a rather extensive cross-examination as to her testimony at the preliminary hearing in the City Court of New Haven, the complainant admitted, in effect, that practically her sole means of identifying the defendant as one of her assailants was the gray sweat shirt.

Cross-examination to elicit facts which tend to show motive, interest, bias or prejudice is a matter of right, and although the extent of such cross-examination may often rest in the sound discretion of the court, a denial of the right, or its undue restriction, will constitute reversible error. *Fordiani's Petition,* 99 Conn. 551, 561, 121 A. 796; *Atwood* v. *Welton,* 7 Conn. 66, 70. It is generally held that cross-examination for this purpose is a substantial legal right which may not be abrogated or abridged at the discretion of the court to the prejudice of the

cross-examining party. *State* v. *Hart,* 239 N.C. 709, 712, 80 S.E.2d 901; *Alford* v. *United States,* 282 U.S. 687, 694, 51 S. Ct. 218, 75 L. Ed. 624. When the right to cross-examine for this purpose is not altogether denied, the scope and extent of the cross-examination may rest in the court's discretion. *State* v. *Robbins,* 35 Wash. 2d 389, 396, 213 P.2d 310. We have said that a trial court has a reasonable discretion to control the extent of cross-examination of state's witnesses when it is aimed at attacking credibility; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490; but we have also frequently pointed out that the right of cross-examination is an indispensable means in the legitimate search for the truth and is to be carefully guarded. *Papa* v. *Youngstrom,* 146 Conn. 37, 40, 147 A.2d 494; *Fahey* v. *Clark,* 125 Conn. 44, 46, 3 A.2d 313; *Bishop* v. *Copp,* 96 Conn. 571, 575, 114 A. 682.

In view of the important part the complainant's identification of the defendant must be held to have played in the proof of the offense charged and of the nature of her testimony as to the basis upon which that identification was made, it was essential to the defendant that he be accorded a broad latitude in his cross-examination to test the veracity of the complainant. *State* v. *Rivers,* 82 Conn. 454, 458, 74 A. 757; see *State* v. *Thomas,* 132 Conn. 483, 488, 45 A.2d 583. The denial of any opportunity to him to cross-examine the complainant to develop her interest and motive, if any, for involving him as a participant in the group attack upon her was prejudicial to his rights. We are constrained to hold that in this respect the court committed harmful error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.