STATE OF CONNECTICUT *v.* JARVIS SHIPMAN
(12262)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and BIELUCH, Js.

Argued December 13, 1984—decision released February 5, 1985

*Albert F. Delaney, Jr.,* with whom, on the brief, was *John T. Short, Jr.,* for the appellant (defendant).

*James E. Thomas,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

PARSKEY, J. The defendant was indicted for murder. Following a jury trial he was convicted of the lesser included crime of manslaughter in the first degree with a firearm. General Statutes § 53a-55a (a).[1] On appeal the defendant claims that the court erred in: (1) denying his motion to dismiss the indictment; (2) striking testimony of Fitzeritson Ingram; (3) permitting the cross-examination of Samuel Rose as a hostile witness; (4) instructing the jury on the manslaughter offense; and (5) denying his motion for acquittal. We find no error.

The jury reasonably could have found the following facts. On the evening of January 9, 1982, Derrick Reynolds was at the Blue Hills Cafe in Hartford. Sometime after his arrival, an argument broke out involv-

---

[1] "[General Statutes] Sec. 53a-55a. MANSLAUGHTER IN THE FIRST DEGREE WITH A FIREARM: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

ing the defendant and Reynolds during which the defendant offered to go outside and fight. Shortly thereafter, the parties left the cafe and continued the argument outside, during the course of which the defendant pulled out a gun and shot Reynolds twice. After the shooting, Reynolds ran up the street, fell bleeding from the chest and subsequently died. The cause of death was attributed by expert testimony to a gunshot wound to the chest damaging the victim's heart and lungs.

## I

Although the defendant was indicted for murder, his subsequent conviction of the lesser included offense of manslaughter implicitly acquitted him of the murder charge. *State* v. *Rodriguez,* 180 Conn. 382, 398–99, 429 A.2d 919 (1980). In these circumstances, his challenge to the indictment is academic, and thus we need not address that claim. See *State* v. *Nardini,* 187 Conn. 109, 112, 445 A.2d 304 (1982).

## II

Fitzeritson Ingram testified on behalf of the state that he observed the defendant shoot the victim. On cross-examination he admitted that he had been charged with robbery in the first degree and was being held under a $10,000 bond. Upon inquiry he denied that the robbery charge might be affected by his testimony in court. Thereafter, when called as a defense witness, he stated that within two hours after he had testified for the state he was released from jail on a written promise to appear, that this release came as a surprise to him and that at no time did it occur to him that his cooperation and testimony might help him in his pending criminal matter. The state moved that the testimony be stricken as irrelevant. Despite the defendant's claim that the evidence was offered to show Ingram's bias when he testified for the state, the court struck

the testimony and admonished the jury to disregard it. Because the defendant took no exception to the court's ruling and presses no constitutional claims in his brief, ordinarily we would not address the issue. We do so in this case as an aid to the bench and bar in the event that similar situations should arise in the future.

Impeachment of a witness for bias is a matter of right. This attack on credibility may be accomplished by cross-examination or by the introduction of extrinsic evidence. McCormick, Evidence (2d Ed.) p. 81. It is generally held that cross-examination for the purpose of eliciting facts which tend to show motive, interest, bias or prejudice "is a substantial legal right which may not be abrogated or abridged at the discretion of the court to the prejudice of the cross-examining party." *State* v. *Luzzi,* 147 Conn. 40, 46–47, 156 A.2d 505 (1959). When the right to cross-examine for this purpose is not altogether denied, the scope of such examination rests in the court's discretion. Id., 47. This same rule applies with respect to the introduction of extrinsic evidence to show bias; that is, proof of the main facts is a matter of right but the extent of the proof of details lies in the court's discretion. See 3A Wigmore, Evidence (Chadbourn Rev.) § 951, p. 797 n.2.

While testifying for the state, Ingram admitted that he had a robbery charge pending against him and that he was then incarcerated under a $10,000 bond. It was proper for the defendant to inquire whether Ingram's testimony on behalf of the state was motivated by a desire for favorable treatment in connection with his criminal prosecution. *State* v. *Corley,* 177 Conn. 243, 247, 413 A.2d 826 (1979). When Ingram denied that he was so motivated, the defendant was not obliged to accept that answer, but was free to contradict him by other proof. *Atwood* v. *Welton,* 7 Conn. 66, 70 (1828). Ingram's sudden release on a written promise to appear was significant in that it tended to lend some support

to the defendant's contention that Ingram expected a return consideration for favoring the state with his testimony. This testimony should not have been stricken. Due to the cumulative nature of Ingram's testimony, however, this error, even if properly preserved, would have been harmless.

### III

During the trial the state issued a subpoena for Samuel Rose, a friend of the defendant. On the day that he was scheduled to testify, Rose left the courtroom prematurely. He was subsequently produced in court as a result of the issuance of a capias. Upon taking the stand, Rose testified that the victim had been "hitting on" the defendant and "getting real violent." He also asserted that he did not see a gun and began to equivocate as to whether or not he had seen the defendant shoot the victim. This testimony was in direct contradiction to Rose's prior written statement. In addition, the state represented that in prior interviews the witness had not mentioned the violence of the victim, and had been definite about having seen a gun and having witnessed the defendant firing it at the victim. The court, after examining Rose's written statement, found that there was surprise and that the witness was hostile and so ruled. The defendant claims there was no surprise and therefore the court erred in permitting the state to impeach its own witness. We do not agree.

The determination of hostility is within the discretion of the trial court. *State* v. *Harris,* 182 Conn. 220, 225, 438 A.2d 38 (1980). " 'Although counsel may have good ground for believing that a witness intends to testify in a manner contrary to a statement he has previously given, counsel may still call the witness to the stand under the belief that, when confronted by the prior statement, the witness will abandon efforts to deviate materially therefrom. . . . Under such cir-

cumstances, if the witness fails to testify in substantial accord with his prior statement, the court has discretion to permit the admission of the inconsistent statement, even though surprise, in the full sense of the word, is lacking.' " *State* v. *Roberson,* 173 Conn 97, 100, 376 A.2d 1089 (1977). The court acted properly in declaring Rose a hostile witness.

## IV

The court, in response to the defendant's request to charge, instructed the jury on the lesser included offense of manslaughter in the first degree with a firearm. The defendant nevertheless challenges the instruction on the grounds that it lacked a sufficient evidential basis and denied the defendant due process of law. Rather than address the merits of the claim, it is sufficient to note that a party cannot be heard to complain about alleged error in an instruction given at his request. *Fox* v. *Fox,* 168 Conn. 592, 594, 362 A.2d 854 (1975). The defendant's constitutional claim is essentially a challenge to the sufficiency of the evidence. This claim must rise and fall on its own merits, which we discuss below, and does not warrant independent consideration merely because the defendant has affixed to it a constitutional label. See *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982).

## V

Examining the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient proof to convict the defendant of manslaughter in the first degree with a firearm. Although the defendant denied shooting the victim, there was ample evidence that he had in fact done so. It was for the jury to weigh the conflicting evidence and to determine the credibility of the witnesses. *State* v. *Myers,* 193 Conn. 457, 473, 479 A.2d 199 (1984). The trial judge, who had observed the witnesses, denied the defendant's motion

for acquittal. In reviewing his action " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983). If we apply that standard to the evidence in this case, the trial court's ruling cannot be disturbed.

There is no error.

In this opinion the other judges concurred.