STATE OF CONNECTICUT *v.* MARY DIORIO
(4244)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued March 31—decision released August 18, 1987

*Richard Emanuel,* for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Scott Murphy,* for the appellee (state).

DUPONT, C. J. The defendant appeals from a judgment of conviction, following a jury trial, of aiding and abetting a breach of the peace, in violation of General Statutes §§ 53a-8 and 53a-181.[1] The defendant claims that the trial court erred (1) by impermissibly restricting her cross-examination of the state's witnesses, (2) by instructing the jury on an offense not cognizable under Connecticut law, (3) by denying the defendant her right to a unanimous jury verdict, (4) by its charge to the jury on circumstantial evidence, (5) by its charge to the jury on reasonable doubt, and (6) by failing to grant the defendant's motion for judgment of acquittal.

The jury could reasonably have found certain relevant facts. The defendant's daughter was a member of the graduating class of a junior high school. Prior to graduation, the dean of students at the school had disciplined the defendant's daughter. Seeking revenge, the defendant hired and paid one Robert Fuller to dress as a clown at graduation and throw a pie in the face

---

[1] The defendant was also charged with, and acquitted of, the crimes of tampering with a witness, in violation of General Statutes § 53a-151, and bribery of a witness, in violation of General Statutes § 53a-149a.

of the dean of students. The dean was hit with a cream pie in front of between one thousand and two thousand people.

## I

The defendant first claims that the trial court erred by unconstitutionally restricting her cross-examination of the state's witness concerning bias, prior acts of misconduct and prior convictions.

### A

#### BIAS

At trial, the defendant attempted to cross-examine Fuller concerning an improper motive for his testimony. The defendant alleged that Fuller's testimony was in return for the nolle of unrelated charges against him six months prior to the pie incident. The defendant also attempted to cross-examine Fuller's business partner concerning bias or motive stemming from a prior plea of guilty to a misdemeanor. The trial judge prohibited cross-examination in both instances.

The right of an accused effectively to cross-examine an adverse witness is embodied in the confrontation clause of the sixth amendment. *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Heinz,* 3 Conn. App. 80, 85–86, 485 A.2d 1321 (1984). A claim of undue restriction on cross-examination ordinarily involves a two-pronged analysis: (1) whether the constitutional standard has been met; and (2) if so, whether the court nonetheless abused its discretion. *State* v. *Heinz,* supra, 86. "The constitutional standard is met when defense counsel is 'permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980), quoting *Davis* v. *Alaska,* supra, 318.

The constitutional standard was met in this case. The defendant was permitted to question Fuller at length regarding any deals made in exchange for his testimony. The trial judge restricted cross-examination regarding the nolled charges, however, since these charges were not pending either at the time Fuller gave his statement to the police or at the time of the defendant's trial. Similarly, the defendant was allowed to cross-examine Fuller's business partner extensively as to any bias stemming from the latter's close relationship with Fuller. Hence, the defendant was " 'permitted to expose to the jury the fact from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Gaynor,* supra.

This leaves the remaining question of whether the trial court abused its discretion in restricting the scope of cross-examination. " 'To establish an abuse of discretion, appellants must show that the restrictions imposed upon their cross-examination were clearly prejudicial.' " *State* v. *Gaynor,* supra, 510. Our review of the transcript indicates that the defendant was not prejudiced. The defendant was permitted the opportunity to cross-examine the state's witness extensively regarding bias or improper motive. When the right to cross-examine to demonstrate bias, motive, or prejudice is not altogether denied, the scope and extent of the cross-examination rests in the court's discretion. *State* v. *Shipman,* 195 Conn. 160, 163, 486 A.2d 1130 (1985); *State* v. *Luzzi,* 147 Conn. 40, 46–47, 156 A.2d 505 (1959). The trial court did not abuse its discretion.

## B
### PRIOR ACTS OF MISCONDUCT

The defendant attempted to cross-examine the state's principal witness concerning five acts of prior misconduct in order to impeach his credibility. A witness may be impeached during cross-examination by specific acts

of misconduct which bear a special significance upon the issue of veracity. *State* v. *Martin,* 201 Conn. 74, 85–86, 513 A.2d 116 (1986); *State* v. *Horton,* 8 Conn. App. 376, 380, 513 A.2d 168, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986). It does not follow, however, that if the acts inquired about are indicative of a lack of veracity, the court must permit the cross-examination. Whether to permit it lies largely within the court's discretion. *State* v. *Roma,* 199 Conn. 110, 117, 505 A.2d 717 (1986); *Vogel* v. *Sylvester,* 198 Conn. 666, 675–76, 174 A.2d 122 (1961). Our review of the record indicates that the trial court did not abuse its discretion in denying the cross-examination. The trial court held a hearing at which defense counsel argued at length for the opportunity to conduct cross-examination concerning the prior acts of misconduct. The court ruled that the acts were, inter alia, remote in time, had a tendency to confuse the jury, were not supported by sufficient evidence, and did not have probative value concerning veracity sufficient to outweigh the potential for prejudicial effect. We agree with its findings and conclude that under these circumstances, the court did not abuse its discretion in restricting cross-examination.

## C

### PRIOR CONVICTIONS

The defendant claims as error the trial court's denial of his cross-examination of the state's principal witness regarding prior criminal convictions. The Connecticut Supreme Court has interpreted General Statutes § 52-145[2] as permitting the use of a witness' prior con-

[2] General Statutes § 52-145 provides in pertinent part: "(a) A person shall not be disqualified as a witness in any action because of, (1) his interest in the outcome of the action as a party or otherwise, (2) his disbelief in the existence of a supreme being, or (3) his conviction of crime. (b) A person's interest in the outcome of the action or his conviction of crime may be shown for purpose of affecting his credibility."

viction to impeach credibility where the conviction was for a crime punishable by imprisonment in excess of one year. *State* v. *Geyer,* 194 Conn. 1, 10, 480 A.2d 489 (1984). The defendant was unable to demonstrate any convictions by the witness which were punishable by imprisonment for more than one year. Consequently, the trial court did not err in denying cross-examination concerning prior criminal convictions.

## II

The defendant next claims that the trial court erred by instructing the jury on an offense, accessory to breach of the peace, which is not cognizable under Connecticut law. The defendant argues that conviction as an accessory[3] requires proof of intent to commit the substantive crime. Since breach of the peace may be committed by either intentional or reckless conduct,[4] the defendant asserts that the offense is not cognizable because a breach of the peace may be committed recklessly but the accessory must still be shown to have intended the outcome.

General Statutes § 53a-8 requires that a defendant have the *mental state required for the commission of a crime* while intentionally aiding another. "[A]n

---

[3] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-181 provides: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public, hazardous or physically offensive condition by any act which he is not licensed or privileged to do."

accessory may be liable in aiding another if he acts intentionally, knowingly, recklessly or with criminal negligence toward the result, depending on the mental state required by the substantive crime." *State v. Foster,* 202 Conn. 520, 531, 522 A.2d 277 (1987). One may be an accessory to a crime without having a conscious objective to cause the result described by a statute defining the crime. Id. Thus, a person may be held liable as an accessory to a reckless act—in this instance, breach of the peace—if he has the requisite culpable mental state—recklessness—for the commission of the substantive offense, and he intentionally aids another in the crime. Therefore, we find that being an accessory to a breach of the peace is a cognizable crime under Connecticut law. The trial court did not err in instructing the jury with respect to the crime.

### III

The defendant's third claim of error is the trial court's failure to instruct the jury to require that its verdict be unanimous when considering alternatively stated elements of the breach of the peace charge. The defendant did not request such a charge at trial, nor did she enter an objection and exception to the instructions given. We have, however, previously reviewed similar claims concerning jury unanimity not raised at trial pursuant to *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and will do so here. See *State v. Milledge,* 8 Conn. App. 119, 122–23, 511 A.2d 366 (1986); *State v. Benite,* 6 Conn. App. 667, 671, 507 A.2d 478 (1986); *State v. Wist,* 3 Conn. App. 650, 654, 491 A.2d 428, cert. denied, 196 Conn. 810, 494 A.2d 906 (1985).

The sixth amendment to the United States constitution guarantees a defendant in a criminal case the right to a unanimous verdict if her jury, as here, con-

sists of only six members. *Burch* v. *Louisiana,* 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979). The defendant argues that the trial court's instruction to the jury that it could convict the defendant on the basis of subsection (2) of General Statutes § 53a-181 ("assaults or strikes another") or, in the alternative, subsection (6) ("creates a public, hazardous, or physically offensive condition by any act which he is not licensed or privileged to do") indicates that the jury may have agreed that the defendant committed a breach of the peace but may have disagreed as to which subsection was violated. This possibility, the defendant asserts, deprived her of her right to a unanimous jury verdict. We disagree.

"If the actions necessary to constitute a violation of one statute or subsection of a statute are distinct from those necessary to constitute a violation of another, then jurors who disagree on which one the state proves cannot be deemed to agree on the actus reus: the conduct the defendant committed. Where the evidence presented supports both alternatives, the possibility that the jurors may actually disagree on which alternative, if either, the defendant violated is the highest. Under such circumstances, the jurors should be told that they must unanimously agree on the same alternative. We do not now hold that that kind of charge . . . must always be given. Rather, such a charge is required only where a trial court charges a jury that the commission of any one of several alternative actions would subject a defendant to criminal liability, and those actions are conceptually distinct from each other, and the state has presented some evidence supporting each alternative. The determination of whether actions are conceptually distinct must be made with reference to the purpose behind the proposed charge: to ensure that the jurors are in unanimous agreement as to what conduct the defendant committed." *State* v. *Benite,* supra, 674–75.

The state presented evidence to demonstrate that the defendant was accessorily responsible for only one act: the throwing of the pie into the face of the dean. While some of the jurors might have believed that the pie incident violated subsection (6) of General Statutes § 53a-181 by creating a public, hazardous or physically offensive condition, they could not have reached this conclusion without first believing that the pie was actually thrown, in violation of subsection (2). See *State* v. *Jones,* 193 Conn. 70, 76–77, 475 A.2d 1087 (1984). In other words, the jury could only have found that the defendant created a public, physically offensive condition by striking the dean of students with the pie. Thus, the evidence presented at trial did not permit significant disagreement as to what conduct the defendant committed.

## IV

The defendant also claims that the trial court erred in its charge to the jury on the use of circumstantial evidence, and the inferences to be drawn therefrom.[5]

---

[5] In its general instructions, the court charged the jury that: "By the evidence I mean not only the testimony of the witnesses which you heard, but also the exhibits which will be provided to you in the jury room. And any reasonable inferences which you may draw from either the testimony or from the exhibits, you may draw reasonable inferences from the established facts in the case. The inference which you draw, however, must not be from a guess on the evidence or a surmise upon the evidence, but it must be from a fact which the evidence has established. And I think you may recall that during the course of the trial I may have referred to that matter as well and it is the facts which must be presented to you and it is on the facts as presented to you that you must make your decision.

"Inferences that you may draw from these established facts must be logical and reasonable and well founded upon facts which have been proven in the trial of the case."

In charging the jury on the elements of tampering with a witness, in violation of General Statutes § 53a-151, the court stated: "What the defendant's intent was in this respect is subject to proof just as in any other fact in the case. In determining what the person's intent was at any given time, in addition to the direct evidence which you would have before you, you may infer intent from what the person's conduct was at the time and what

The court, in its charge to the jury on tampering with a witness and bribery of a witness, stated that inferences to be drawn be "strong enough so that you can find" that "it is more probable than not that the inference being drawn is true."

The facts pertinent to the defendant's claim of error are as follows: Shortly after the incident, the defendant voluntarily gave a statement to the police in which she denied having hired the clown to throw the pie at the victim. At trial, that statement was introduced as evidence. The clown testified that the defendant and her husband had telephoned his store to inquire about his services, and that the defendant later entered his store, ordered the pie throwing as part of the graduation ceremonies, and paid him for the service. He identified her for the police at a place where she was, or

the circumstances were surrounding that conduct. Such an inference may be drawn provided two elements are satisfied.

"The first is that the conduct of the defendant at the time and the circumstances surrounding such conduct from which you are being asked to draw an inference have themselves been proven beyond a reasonable doubt, and secondly, that the inference asked to be drawn is not only logical and reasonable, but it is strong enough so that you can find that it is *probable, more probable than not that the fact that you are asked to infer is true.*" (Emphasis added.)

The court then charged the jury on the elements of the crime of bribery of a witness, a violation of General Statutes § 53a-149a, and stated: "The defendant's intent is to subject to proof just as any other fact in the case. In determining what is her intent was at the time of the issue you may in addition to any direct testimony, infer from what the defendant's conduct was at the time or from what the circumstances were concerning that conduct and you may make such an inference provided that you are satisfied, one, that the conduct of the defendant and the circumstances surrounding such conduct had been proven beyond a reasonable doubt, two, that the making of such an inference is not only logical and reasonable, but is strong enough so that you can find that it is *more probable than not that the inference being drawn is true.*

"If you find that the State has failed to prove beyond a reasonable doubt any one of the elements on which you have been instructed, you will find the defendant not guilty."

had been employed, and he identified her at trial. The defendant's niece testified, and stated that the defendant had admitted to being responsible for the incident. The niece further testified that the defendant and her husband had offered her five hundred dollars to assume responsibility for the incident, and as part of that plan, had taken her to have her hair frosted in order to resemble the defendant more closely. Although the defendant did not testify at trial, her husband did and stated that neither he nor his wife had hired the clown.

In the recent past, despite the failure of a defendant to object and except to similar erroneous instructions at trial, such claims of error, under the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), have been reviewed. *State* v. *Mullings,* 202 Conn. 1, 12–14, 519 A.2d 58 (1987); *State* v. *Whelan,* 200 Conn. 743, 756, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Sullivan,* 11 Conn. App. 80, 94, 525 A.2d 1353 (1987). Such review is appropriate "where the defendant can demonstrate the deprivation of a fundamental constitutional right and a fair trial. *State* v. *Preyer,* 198 Conn. 190, 196–97, 502 A.2d 858 (1985)." *State* v. *Whelan,* supra. The record in this case is adequate to support the contention that the defendant's claim is reviewable under the *Evans* doctrine. See *State* v. *Robinson,* 204 Conn. 207, 210 n.4, 527 A.2d 694 (1987).

Our review of the record in this case, however, fails to support the defendant's claim that the court's charge, which related to the use of circumstantial evidence to infer intent, clearly deprived her of a "fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. It is by now well established that such a charge, when given once as part of a general charge where the principal factual issue is identity, will rarely if ever lead to the conclusion that it is reason-

ably possible that the jury was misled as to the state's burden of proving every element of the crime beyond a reasonable doubt. *State* v. *Miller,* 202 Conn. 463, 491–92, 522 A.2d 249 (1987); *State* v. *Reddick,* 197 Conn. 115, 132–33, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

Here, the principal factual issue to be determined by the jury was the identity of the person who solicited the pie throwing services. That element was established primarily by the testimony of the clown who, as an eyewitness, identified the defendant. This testimony of the defendant's identity as the solicitor of the clown's services was a matter of direct evidence, and required no inference drawing by the jury. *State* v. *Sullivan,* supra, 97. The testimony of the niece, which related the defendant's admission of her responsibility for the incident, was likewise evidence that the defendant had solicited the clown's services. The niece's further testimony about the offer of money to her and the hair frosting, if believed, was circumstantial evidence from which the inference of the defendant's solicitation could be drawn. Id.

In this case, the language complained of was charged only with respect to the proof of intent of the two crimes of which the defendant was acquitted. That charge was not given to the jury with respect to the proof of the elements of the crime of which she was convicted, nor was an erroneous general charge on circumstantial evidence and inferences given. The record reveals that in this case the element of intent was undisputed by the defendant throughout the course of the trial. The defense consisted of an attempt to discredit the state's witnesses who testified about the defendant's involvement by showing their bias and motives, and in so doing to destroy the state's proof of the identity of the defendant as the perpetrator of the crimes charged. The charge on the use of circum-

stantial evidence and the drawing of inferences was limited in its use to the issue of intent, was not related to any other element of the crimes charged, and was unrelated to the issue of identity. We conclude, therefore, that it is not reasonably possible that the jury was misled by this charge.

## V

The defendant next claims that the trial court erred in its charge to the jury on reasonable doubt.[6] She argues that the court erred (1) by charging the jury that "[a] reasonable doubt is a doubt for which a valid reason can be assigned," and (2) by not charging the jury, as she requested, that "a reasonable doubt is the kind of doubt that would make you hesitate to act."[7] Although she did not preserve the first claim at trial, she now seeks a full review under *State* v. *Evans,* supra, 70, in reliance upon the review granted to such a claim in *State* v. *Findlay,* 198 Conn. 328, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

[6] The court charged the jury on the concept of reasonable doubt as follows: "Now the phrase 'reasonable doubt' has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word 'reasonable.' *A reasonable doubt is a doubt for which a valid reason can be assigned.* It is a doubt that is something more than a guess or a surmise. It is not a conjecture or fanciful or captious doubt. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts, nor is it a doubt suggested by the ingenuity of counsel or a juror which is not warranted by the evidence. A reasonable doubt in other words is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or in the lack of the evidence. It is such a doubt as in the serious affairs which concern you in everyday life you would pay some heed to." (Emphasis added.)

[7] The defendant's request to charge on the hesitation to act relied upon *Johnson* v. *Louisiana,* 406 U.S. 356, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972), and states: "A reasonable doubt is the kind of doubt that would make you hesitate to act in pursuing the most important affairs of your life. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character as to cause you not to hesitate in the most important of your affairs."

The defendant's challenge to the language "a doubt for which a valid reason can be assigned" in the context of a reasonable doubt charge is essentially identical to both the charge and challenge brought previously to our Supreme Court in *State* v. *Findlay,* supra, 346 n.14.

In order to determine whether the defendant's claim is reviewable under the *Evans* doctrine we must answer two questions in the affirmative. The first is does the defendant raise an issue which by its terms implicates a fundamental constitutional right, and the second is can we conclude, upon a limited review of the record, that the claim is truly of constitutional proportions, or is only characterized as such by the defendant. *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891 (1987). "In those instances in which our Supreme Court or this court has already clearly indicated that the particular claim is or is not of constitutional proportions and therefore reviewable or not reviewable, a summary 'yes' or 'no' answer may be sufficient." Id., 307. The defendant's claim here implicates a fundamental constitutional right; *State* v. *Findlay,* supra, 345–48; but it does not thereby automatically qualify for a full scale appellate review. *State* v. *Thurman,* supra, 306–307; see also *State* v. *Farrar,* 7 Conn. App. 149, 153 n.3, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986); *State* v. *Cosby,* 6 Conn. App. 164, 172, 504 A.2d 1071 (1986).

Our limited review of the record reveals that this claim is characterized by the defendant as being of constitutional proportions, but is not truly of such proportion. The language of this charge was held in *Findlay* not to be a deprivation of a constitutional right. Thus, we may summarily answer the second question of our *Evans* analysis with a "no," and conclude that this claim does not qualify for further review. See *State* v. *Thurman,* supra. Preserving *Evans* as a narrow bypass

serves to ensure that claims which might require reversal will be raised at trial, permitting their timely correction, thereby avoiding "needless multiple proceedings which are neither in the defendant's nor the public's interest, and which contribute to the economic waste of court congestion. *State* v. *Kurvin,* 186 Conn. 555, 563–66, 442 A.2d 1327 (1982); *State* v. *Torrence,* 1 Conn. App. 697, 704–705, 483 A.2d 622 (1984), aff'd, 196 Conn. 430, 493 A.2d 865 (1985)." *State* v. *Cosby,* supra, 173.

The defendant's second claim, that the trial court committed harmful error by failing to charge the jury with "hesitate to act" language, was preserved by the defendant by her request to charge. Practice Book § 852. That claim, however, is equally unavailing. The defendant is not entitled to a charge comprised of exactly the words she requests. *State* v. *Estep,* 186 Conn. 648, 653, 443 A.2d 483 (1982). The court's instruction regarding the concept of a reasonable doubt as affecting one's daily activities fairly conveyed the point to the jury. The charge on this point, reviewed in light of the instruction as a whole, was adequate to guide the jury and protect against injustice. No harmful error is evidenced by the failure to use the words requested by the defendant. *State* v. *Estep,* supra, 652.

## VI

The defendant's final claim is that the evidence was insufficient to establish her guilt beyond a reasonable doubt. The claim of insufficient evidence was raised by the defendant's motion for judgment of acquittal at the close of the state's case, and by her motion to set aside the verdict. The defendant claims that the charge as given allowed the jury to consider the subsections in the alternative and that the evidence was insufficient on both subsections (2) and (6) of General Statutes § 53a-181 as charged to the jury. The defendant did not

object to the charge to the jury on either subsection on the ground that the evidence was insufficient to support a conviction. The defendant also neglected to request a jury poll after the verdict to clarify the basis of the defendant's conviction.

In these circumstances, where the defendant has not taken steps to clarify which subsection she was convicted under, the conviction will be upheld if the evidence is sufficient under either subsection. *State* v. *Duhan,* 194 Conn. 347, 353–55, 481 A.2d 48 (1984). The evidence presented at trial is viewed in a light most favorable to sustaining the verdict. *State* v. *Leavitt,* 8 Conn. App. 517, 523, 513 A.2d 744 (1986). On review, we must determine whether " *'any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983); quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

The jury was charged, in part, with respect to subsection (2) of the statute, that "striking" another is "the intentional use of force or violence on the person of another," and that "the striking must be accompanied with an intent to do harm." The defendant contends that the evidence adduced at trial fails to support a finding that the defendant intended to do harm to the victim. While harm is not defined in the penal code, it is, in common usage defined as "physical or mental damage" by Webster, Third New International Dictionary; and as "to damage; injure; impair" by the New College Edition of the American Heritage Dictionary (1981).

With respect to subsection (6), the jury was instructed that a "physically offensive" condition "refers to matter, material, or substance which is revolting, disgusting, or repugnant." A material which is repugnant is

one which is "distasteful to a high degree: exciting distaste or aversion." Webster Third New International Dictionary.

The facts which the jury could reasonably have found from the evidence introduced at trial are that the victim was hit in the face by a pie, which caused his vision to be blurred and a burning sensation to be felt in his eyes for several hours afterward, as well as shock and embarrassment from the event. This evidence clearly supports a finding that by use of force his vision was impaired, and that he suffered some degree of physical damage. The evidence of being struck by a pie in the face in front of somewhere between one and two thousand people, and the testimony of embarrassment and humiliation suffered, is sufficient to uphold a rational trier's finding that the incident was thus highly distasteful, and would cause distaste or aversion to a reasonable person. Thus, the evidence was sufficient to sustain the conviction not only under one subsection, as is required here, but under both subsections of the statute. Compare *State* v. *Duhan,* supra, 353–55; with *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983).

There is no error.

In this opinion the other judges concurred.